UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID SILVA,

       Petitioner,

                                    Case Number: 06-12603-BC
                                    Honorable Thomas L. Ludington
                                    Magistrate Judge Charles E. Binder

v.

DAVID GUNDY,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Petitioner David Silva, a state prisoner currently confined at Oaks Correctional Facility in Manistee, Michigan filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, asserting that he is in custody in violation of his constitutional rights. Petitioner's present custodian is Cindi S. Curtin, but when he filed his petition, although he was still confined at Oaks Correctional Facility, his custodian at that time was David Gundy.

       Petitioner was convicted of kidnapping, Mich. Comp. Law § 750.349, second degree murder, Mich. Comp. Law § 750.317, and possession of a fire-arm during the commission of a felony, Mich. Comp. Law § 750.227b, on September 16, 1999 following a jury trial in circuit court in Lenawee County, Michigan. He was sentenced on November 3, 1999 as an habitual offender, second offense, Mich. Comp. Law § 769.10, to concurrent terms of life imprisonemnt for the kidnapping conviction and seventy-five to one hundred fifty years' imprisonment for the second-degree murder conviction, to be served consecutively to a two year term for the felony fire-arm conviction. Petitioner raises

claims of prosecutorial misconduct, improper admission of prior bad acts, improper admission of threats, insufficient evidence, and ineffective assistance of appellate counsel, in support of his allegation that he is being held in violation of his constitutional rights. Respondent has filed an answer to the petition asserting that habeas relief should be denied because the claims are either not cognizable under habeas review, procedurally defaulted, or without merit. The Court finds that Petitioner is not entitled to habeas relief and, therefore, the petition will be denied.

I.

The conviction in this case arises from the alleged kidnapping and shooting death of seventeen year old Roberto Silva[1] which occurred on September 6, 1998. Jeffrey Diaz, Ramiro Silva, and Petitioner were charged in the victim's kidnapping and death. The victim was allegedly kidnaped and murdered due to his involvement in the theft of marijuana of which Jeffrey Diaz, Ramiro Silva, and Petitioner were to benefit. The victim's body was found on September 17, 1998 in a cornfield in Ogden Township by Harold Gentz, an individual who was farming the field. Diaz pled guilty to second-degree murder pursuant to a plea agreement and testified against Petitioner at trial.

Following his conviction and sentencing, Petitioner, through counsel, filed a direct appeal in the Michigan Court of Appeals, raising six issues: (1) prosecutorial misconduct by vouching for a witness; (2) improper admission of prior bad acts; (3) improper admission of alleged threats; (4) abuse of discretion by the trial court when imposing sentence upon Petitioner; (5) error by the trial court in sentencing Petitioner to a virtual life sentence without the possibility of parole; and (6)

---

[1]Roberto Silva is of no relation to Petitioner in this case and will be referred to as the "victim" so as to avoid confusion within the text of this opinion.

ineffective assistance of trial counsel in his failure to place certain objections on the record, failure to impeach a witness and failure to subpoena an alibi witness.

Petitioner then filed a *pro se* supplemental brief on appeal raising the following issues: (1) improper admission of inflammatory and prejudicial color photographs of the victim; (2) improper admission of Petitioner's prior prison sentence; (3) improper admission of evidence from an alleged "paid" witness; (4) improper jury instructions; and (5) ineffective assistance of trial counsel when he failed to interview Petitioner's witnesses, abandoned Petitioner's only defense, and failed to maintain communication with Petitioner. The Michigan Court of Appeals affirmed Petitioner's convictions on November 19, 2002. *People v. Silva,* 2002 WL 31934385 (Mich. Ct. App. Nov. 19, 2003). Following the state appellate court's decision, Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court raising the same issues presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Silva,* 468 Mich. 939, 664 N.W.2d 220 (June 30, 2003) (Table).

On September 22, 2003, Petitioner filed a motion for relief from judgment with the trial court. Within that motion, Petitioner raised the following issues: (1) insufficient evidence; (2) invalid criminal complaint; (3) cumulative error; (4) improper imposition of sentence; and (5) ineffective assistance of appellate counsel in failing to raise certain issues on direct appeal. On October 31, 2003, the trial court denied Petitioner's motion for relief from judgment.

On July 19, 2004, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, appealing the denial of his motion for relief from judgment. On December 16, 2004, the state court of appeals denied leave to appeal. *People v. Silva,* 256902, (Mich. Ct. App. Dec. 16, 2004). Petitioner filed an application for leave to appeal with the state supreme court on

January 24, 2005, and leave was also denied. *People v. Silva,* 474 Mich. 931; 706 N.W.2d 24 (2005) (Table).

Petitioner thereafter filed his federal petition for writ of habeas corpus asserting the following claims: (1) prosecutorial misconduct by vouching for a witness; (2) improper admission of prior bad acts; (3) improper admission of alleged threats; (4) insufficient evidence; and (5) ineffective assistance of appellate counsel for failing to raise the insufficiency of evidence issue on direct appeal. Respondent has filed an answer to the petition asserting that habeas relief should be denied because the claims are either not cognizable under habeas review, procedurally defaulted, or without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

Petitioner first claims that the prosecutor engaged in misconduct by vouching for Jeffrey Diaz's credibility during the examination of Detective Sergeant Hugh Welsh, a prosecution witness. The exchange between Welsh and the prosecutor is as follows:

> A: On the 22nd of September I received a note from the prosecutor's office advising that Jeffrey Diaz had failed to appear for a trial on an unrelated matter. Jeffrey Diaz had been developed as one of the possible suspects in this instance. Through the prosecutor's office we were able to obtain a warrant for absconding for Jeffrey Diaz.
>
> \* \* \*
>
> A: On October 21st Ranger Pancheco telephoned me and he advised that he had located and arrested Jeffrey Diaz.
>
> Q: After hearing that did you make some effort to interrogate Jeffrey Diaz?
>
> A: Yes.
>
> \* \* \*
>
> Q: When was his appearance and demeanor when you interviewed him in McAllen, Texas?
>
> A: Jeff Diaz was extremely nervous and upset, very remorseful, almost eager to talk to us about what we were there for.

Q: Did what he talk to you about relate to the investigation of the death of Robert Silva?

A: Yes. It did.

Q: Were you able to verify that in fact Jeffrey Diaz was an active participant in this criminal activity?

A: Yes, I was.

Q: Did he give information on the involvement of others?

A: Yes, he did.

Q: Did he give information regarding the disposition of physical evidence?

A: Yes, he did.

Q: Did you compare the information that he gave with what you then knew about these crimes?

A: Yes, I did.

Q: Was it consistent?

Mr. Goldstein: I will object. The addition as to whether or not Mr. Diaz has been truthful throughout the investigation – Since we know he will be a witness in the trial, that rests with the jury. What Mr. Shaw is trying to do is to have this man vouch for Mr. Diaz's credibility.

Mr. Shaw: I haven't done that.

Mr. Goldstein: You just asked him that question, "Was what Mr. Diaz said consistent with what you already knew?" He is asking him, "Is he telling the truth?" It is another form of the same question.

Mr. Shaw: No, it is not the same question.

The Court: I don't believe it is and you may ask the question.

By Mr. Shaw:

Q: Were there consistencies between what he related to you and what you already knew?

> A: Yes.

Tr. Vol. I, 9/14/99, at 129-31. The Michigan Court of Appeals rejected Petitioner's argument, stating that the issue was not preserved for appellate review.

> On appeal, defendant first argues that the prosecutor committed misconduct by vouching for Diaz's credibility during his examination of a prosecution police witness. Because defendant did not object to the testimony on this ground at trial but instead objected only on the ground that the prosecutor improperly asked the *witness* to vouch for Diaz's credibility, we find that this issue was not preserved. . . . Accordingly, we review this issue for plain error affecting defendant's substantial rights.
>
> Examined in context it is apparent that the prosecutor's questioning did not involve any argument or statement that could be construed as improperly vouching for the credibility of Diaz, who had not even testified yet. Rather, the purpose of the questioning was to elicit information about why the police officer took certain actions. Because the prosecutor did not elicit any details about what Diaz told the police witness, we conclude that plain error has not been demonstrated.

*People v. Silva,* 2002 WL 31934385, *1 (internal citations omitted). Petitioner's vouching claim was reviewed by the state appellate court on the merits despite the fact that the issue was not preserved for appellate review. For the reasons set forth above, Petitioner's prosecutorial misconduct claim is procedurally defaulted. The Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also *Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F.Supp.2d 874,

887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits on all of the petitioner's claims prosecutorial misconduct claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999). The Court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

The first question to consider is whether the prosecutor's conduct or remarks during his examination of Detective Sergeant Welsh were improper. *See Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.* at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were said deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004).

The Court agrees with the state court's finding that the prosecutor did not improperly vouch for the credibility of the Diaz or Welsh. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992), or

when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness' testimony, thereby placing any perceived prestige of the office of the Macomb County prosecutor, in this case, behind the witness. *See United States v. Francis,* 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, improper vouching involves either blunt comments, *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony. *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994).

A review of the above cited exchange between Detective Sergeant Welsh and the prosecutor indicates that the prosecutor did not vouch for Welsh or for Diaz. Rather, the purpose of the questioning was to determine the circumstances surrounding Diaz's interrogation and generally whether the testimony of Diaz was consistent with information of which Welsh was already aware. Therefore, habeas relief is not warranted on this ground.

B.

Petitioner next contends that the trial court erred in admitting evidence of his "prior bad acts" involving assaultive behavior upon his girlfriend at the time, Yvonne Ybarra. The following colloquy occurred at trial:

Q: At that time, you were afraid of David?

A: Yes.

Q: Why?

A: For one because of what he did to Bobby. For two I had already experiences with him.

Q: What kind?

A: He had choked me one time so bad that, I don't know what it was, but I went

-10-

crazy and he had to take me to the hospital and he left me there.

Q: When did that happen?

A: I don't know when it was. It was before that.

Q: How long before?

A: Probably a month.

Q: July or August, maybe?

A: Yes.

\* \* \*

Q: Why did he decide before Christmas to go back to Dearborn?

A: Because we were so broke. I would cry every day about my kids and he would beat me up because I missed my kids or call me a sissy, make fun of me.

Tr. Vol. II, 9/15/99, at 223, 235[2]. The state court of appeals determined that the trial court did not err in admitting the evidence. It held as follows:

> Because defendant did not object to the challenged testimony on this ground at trial, this issue is not preserved. Further, we hold that defendant has not shown plain error.
>
> \* \* \*
>
> Here Yvonne's testimony regarding the acts of violence allegedly perpetrated against her by defendant was relevant to her credibility as a witness, which was a material issue at trial. Her relationship with defendant was one of the factual issues bearing on her motive to come forward with information that defendant made incriminating statements about the murder "[I]t is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which the disputed events took place." Within limits, parties may present evidence assailing or supporting a witness' credibility. Thus, Yvonne's testimony does not constitute plain error.

*People v. Silva,* 2002 WL 31934385, \*2 (internal citations omitted). For the above stated reasons,

---

[2]Petitioner also references inadmissible testimony of prior bad acts in the form of alleged threats made by Petitioner to Diaz. The Court will address that issue below, as it is an integral part of Petitioner's third claim for habeas relief.

although the Court acknowledges the procedural default relative to this issue, the merits of Petitioner's claim will be reviewed.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir. 1994). The Sixth Circuit Court of Appeals has explained that:

> "[E]rrors in application of state law, especially rulings regarding the admission or exclusion of evidence are usually not to be questioned in a federal habeas corpus proceeding. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996), quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977); see also *Spencer v. Texas,* 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The Sixth Circuit has repeatedly held that only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States,* 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of bad acts evidence." *Bugh v. Mitchell,* 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. §2254(d)(1). *Bugh,* 329 F.3d at 513. The Court therefore cannot say that admission of Petitioner's past assaults upon Ybarra violated any of his federal constitutional rights.

C.

Petitioner next asserts that the trial court erred in admitting evidence of alleged threats he made to Ybarra and Diaz. Ybarra testified that Petitioner threatened to kill her more than fifty times if she told anyone about Petitioner's involvement in Roberto Silva's murder. Tr. Vol. II, 9/15/99, at 235-36, 239. Diaz testified that Petitioner repeatedly made threats against him in the past when they were serving time together in prison regarding other matters and relative to Roberto Silva's murder. Tr. Vol. III, 9/16/99, at 395. Relying upon the above analysis regarding the admissibility of Ybarra's testimony about Petitioner's alleged assaults upon her, the state appellate court rejected this claim stating:

> Once again, however, defendant has not established plain error because a defendant's threats against a witness are generally admissible. We similarly conclude that [Ybarra's] testimony concerning threats by defendant did not constitute plain error.

*People v. Silva,* 2002 WL 31934385, *2 (internal citations omitted). Likewise, for the same reasons set forth above, the Court finds that despite the procedural default relative to this issue, the merits were reviewed and habeas relief is not warranted on this claim.

D.

Petitioner next maintains that he is entitled to habeas relief because the prosecution failed to produce sufficient evidence at trial to sustain his conviction for second-degree murder. Petitioner contends that the facts as presented at trial do not substantiate any of the elements of a second-degree murder offense. Petitioner raised this issue for the first time in his motion for relief from judgment, and after the trial court denied the motion, his leave to appeal filed with the state appellate and supreme courts was also denied.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of evidence is "whether the record could reasonably support a finding of guilty beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979).

This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19. This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Id.* at 324, n. 16, and through the framework of 28 U.S.C. §2254(d), *Martin v. Mitchell,* 280 F.3d 594, 617 (6th Cir. 2002).

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable up to life imprisonment. Mich. Comp. Laws §750.317. To establish second-degree murder, the prosecution must show "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse," *People v. Aldrich,* 246 Mich. App. 101, 123; 631 N.W.2d 67 (2001). In order to show malice aforethought, the prosecution must establish that the defendant had: (1) the intent to kill; (2) the intent to commit great bodily harm; or (3) the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *People v. Carines,* 460 Mich. 750, 760; 597 N.W.2d 130 (1991).

When viewing the evidence as a whole in the light most favorable to the prosecution, it is clear that the prosecutor presented sufficient evidence for which a trier of fact could have concluded, beyond a reasonable doubt that Petitioner committed second-degree murder. Evidence adduced at

trial established that Petitioner had motive for killing Roberto Silva due to the botched marijuana deal for which Petitioner blamed Roberto Silva. The proofs further indicate that Roberto Silva was taken in a vehicle driven by Jeffrey Diaz and was not permitted to leave the car. The testimony revealed that Roberto Silva was beaten and was pleading for his life while in the vehicle. After driving the victim out to a cornfield, and dumping him face down onto the ground, Mr. Diaz testified that as he planted his foot onto the victim, Petitioner accidentally shot a bullet which did not hit anyone. However, immediately after the accidental shot, Petitioner shot three bullets into the back of the victim's head and then fired a final shot, also into the back of his head. Petitioner argues in his petition that there was a struggle for the gun between he and Roberto Silva, which negates the malice element. However, the witness testimony, nor the forensic evidence supports the theory that the shooting was in self-defense or was an accident.

"[C]ircumstantial evidence alone is sufficient to sustain a conviction," and the prosecutor was not required "remove every reasonable hypothesis except that of guilt." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984)). Moreover, this Court is not required to reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003) (quoting *Marshall v. Lonberger,* 459 U.S. 422 (1983)). "The mere existence of sufficient evidence to convict therefore defeats [the] petitioner's claim." *Id.* at 788-89. The state court's conclusion that the evidence was sufficient to sustain Petitioner's murder conviction did not result in an unreasonable application of *Jackson.*

E.

Finally, Petitioner asserts that he is entitled to habeas relief because he was denied effective

assistance of appellate counsel on his direct appeal when he failed to raise the above referenced insufficiency of evidence argument. For claims of ineffective assistance of appellate counsel, the petitioner must show that appellate counsel failed to raise an issue which was reasonably probable to have changed the result on appeal. *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000); *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001). Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Greer,* 264 F.3d at 676. For the reasons discussed above, Petitioner's insufficiency of evidence claim has no merit. Therefore, under *Greer*, habeas relief is denied on this claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk.# 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, because reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Petitioner decides to appeal this Court's decision, he may do so *in forma pauperis*, because he was permitted to proceed *in forma pauperis* in the District Court and the appeal could be taken in good faith. Fed. R. App. P. 24(a)(3).

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: June 12, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 12, 2008.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS